IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on January 8, 2020

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 18-CR-377 |
| v. | 18 U.S.C. § 371 (Conspiracy) |
| EPHRAIM HIZON GARCIA and GANDHIRAJ SANKARALINGAM a/k/a GANDHI RAJ, | 41 U.S.C. §§ 8702, 8707 (Kickbacks) |
| | 18 U.S.C. § 201(c) (Illegal Gratuities) |
| Defendants. | 18 U.S.C. § 2 (Aiding and Abetting, Causing an Act to be Done) |
| | 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) (Criminal Forfeiture) |

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times material to this Superseding Indictment, unless otherwise stated:

1. The United States maintained and operated a military base in Kuwait, known as Camp Arifjan. The United States Army was responsible for base operations at Camp Arifjan.

2. Defendant EPHRAIM HIZON GARCIA ("GARCIA") was a civilian employee of the U.S. Army's Directorate of Public Works ("DPW") stationed at Camp Arifjan from approximately 2007 until 2016. GARCIA had resided in Kuwait since approximately 2000.

3. During his time with DPW, GARCIA was involved in the solicitation, award, and management of certain government contracts related to, among other things, heating, ventilation, and air conditioning ("HVAC") projects at Camp Arifjan.

1

4. In or around 2011, the United States Army awarded a contract ("Prime Contract") to a corporation based in Colorado Springs, Colorado ("Prime Contractor") to provide support services at Camp Arifjan. The Prime Contract was known as the Kuwait Base Operations Security Support Services ("K-BOSSS") contract.

5. Gulf Link Venture Co. W.L.L. ("Gulf Link") was a Kuwait-based subcontractor that bid for projects under the Prime Contract, including HVAC projects at Camp Arifjan. Defendant GANDHIRAJ SANKARALINGAM a/k/a GANDHI RAJ ("SANKARALINGAM") was the General Manager and co-owner of Gulf Link. SANKARALINGAM and GARCIA had known each other since at least 2005, and at various times communicated about projects or potential projects on U.S. military installations in Kuwait, including projects under the Prime Contract.

6. In or around late August to early September 2015, GARCIA, acting in concert with SANKARALINGAM, approached an employee of the Prime Contractor ("Prime Contractor Employee") and offered to pay him in exchange for his assistance in steering subcontracts to Gulf Link.

7. Specifically, GARCIA told the Prime Contractor Employee that, in exchange for his assistance in ensuring that Gulf Link won certain subcontracts, Gulf Link would artificially inflate the cost of the subcontracts by between 14 and 25 percent, and GARCIA, Gulf Link, and the Prime Contractor Employee would split the illicit proceeds. GARCIA further told the Prime Contractor Employee that he needed to "be careful" and not put the money he would receive into his bank account.

8. From in or around 2010 through in or around 2015, members of GARCIA's immediate family received in their bank accounts in excess of 60 wire transfers of funds originating

2

in Kuwait, totaling more than $170,000, including multiple wire transfers that were sent by SANKARALINGAM and other employees of Gulf Link, and by employees of Subcontractor #2, another Kuwait-based subcontractor that also bid for projects under the Prime Contract. These wire transfers were sent through an international money-exchange company from Kuwait to the U.S.-based bank accounts of GARCIA's family members.

9. SANKARALINGAM and others facilitated these wire transfers by using their Kuwaiti civil identification cards ("civil IDs"), which were required to be presented at the international money-exchange facility in order to send a wire transfer. GARCIA lacked a Kuwaiti civil ID.

10. SANKARALINGAM undertook these actions in the course and scope of his employment with Gulf Link and to benefit Gulf Link.

11. Transferring money in the above-described manner enabled GARCIA to transfer large sums of money out of Kuwait without the funds passing through any of his personal accounts.

12. During this same time period, GARCIA was involved in reviewing bid proposals submitted by Gulf Link and Subcontractor #2, and acted on those proposals, including by developing cost estimates, performing technical reviews, and scoring the proposals.

13. In particular, in or around May 2013, GARCIA reviewed bids from subcontractors in connection with Contract #W912D1-13-P-0023, which was for the installation of six HVAC units at Camp Arifjan. GARCIA improperly disqualified one of the bidders that had submitted a proposal which was priced lower than Gulf Link's, resulting in the improper initial selection of Gulf Link to receive the contract. The U.S. Army later determined that the selection of Gulf Link was improper, and instead awarded the contract to the bidder that GARCIA had improperly disqualified.

14. Many of the acts referred to in this Superseding Indictment were committed in Kuwait, outside the jurisdiction of any particular state or district of the United States. After his arrest overseas, GARCIA was first brought to the United States District Court for the District of Columbia for arraignment; therefore, pursuant to Title 18, United States Code, Section 3238, venue in this Court is proper for trial of the offenses alleged in this Superseding Indictment.

## COUNT ONE
### Conspiracy
### (18 U.S.C. § 371)

15. Paragraphs 1 through 14 of this Superseding Indictment are re-alleged and incorporated by reference as if set out in full.

16. Beginning on a date unknown to the Grand Jury, but no later than in or about August 2015, and continuing through in or about March 2016, in and around Camp Arifjan, Kuwait and outside the jurisdiction of any particular district, Defendants GARCIA and SANKARALINGAM did knowingly and intentionally combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, as follows: To knowingly and willfully provide, attempt to provide, and offer to provide a kickback, in violation of Title 41, United States Code, Sections 8702 and 8707.

### Object of the Conspiracy

17. It was the object of the conspiracy for GARCIA and SANKARALINGAM to enrich themselves by entering into an agreement with the Prime Contractor Employee to steer the award of subcontracts under the Prime Contract to Gulf Link, in return for which SANKARALINGAM, acting on behalf of Gulf Link, would send a share of the illicit profits to GARCIA and the Prime Contractor Employee.

## Manner and Means

18. In furtherance of the conspiracy, GARCIA and SANKARALINGAM employed or intended to employ the following manner and means, among others:

19. SANKARALINGAM and others working for Gulf Link would submit or cause to be submitted to the Prime Contractor, through normal channels, redacted proposals for subcontracts under the Prime Contract.

20. SANKARALINGAM and others working for Gulf Link would then email or cause to be emailed the redacted proposals to the Prime Contractor Employee, using the Prime Contractor Employee's personal, non-work-related email address. This would enable the Prime Contractor Employee to identify which of the redacted proposals had been submitted by Gulf Link.

21. The Prime Contractor Employee would use his position to facilitate the award of the subcontracts to Gulf Link.

22. The costs for the subcontracts would be artificially inflated above that which would have been charged absent the conspiracy.

23. GARCIA, SANKARALINGAM, and the Prime Contractor Employee would split the proceeds generated from the artificially inflated costs.

## Overt Acts

24. In furtherance of the conspiracy and to effect its object, the following overt acts, among others, were committed:

    a. In or around late August 2015, GARCIA and SANKARALINGAM approached the Prime Contractor Employee at a location away from Camp Arifjan and stated that they wanted Gulf Link to be awarded certain subcontracts, and suggested that SANKARALINGAM, acting on behalf of Gulf Link, was

5

      willing to pay the Prime Contractor Employee for his assistance in facilitating the award of subcontracts to Gulf Link.

b. On or about September 2, 2015, GARCIA approached the Prime Contractor Employee and told him that, in exchange for his assistance in ensuring that Gulf Link won certain subcontracts, Gulf Link would artificially inflate the cost of the subcontracts by between 14 and 25 percent, and GARCIA, Gulf Link, and the Prime Contractor Employee would split the illicit proceeds. GARCIA further told the Prime Contractor Employee that he needed to "be careful" and not put the money he would receive into his bank account.

c. On or about September 2, 2015, SANKARALINGAM caused an employee of Gulf Link to email the Prime Contractor Employee (at his personal, non-work-related email address) two redacted proposals Gulf Link had prepared in connection with two projects at Camp Arifjan, so as to enable the Prime Contractor Employee to identify Gulf Link's proposals from among those the Prime Contractor received.

d. On or about March 7, 2016, GARCIA agreed to a follow-up meeting with the Prime Contractor Employee to further discuss the arrangements by which subcontracts could be steered to Gulf Link.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
## Kickbacks
## (41 U.S.C. §§ 8702, 8707; 18 U.S.C. § 2)

25. Paragraphs 1 through 14 of this Superseding Indictment are re-alleged and incorporated by reference as if set out in full.

6

26. In or around September 2015, in Kuwait, Defendant GARCIA knowingly and willfully provided, attempted to provide, and offered to provide a kickback; that is, GARCIA offered to provide money to the Prime Contractor Employee to improperly obtain and reward favorable treatment in connection with the Prime Contract and subcontracts relating to the Prime Contract.

All in violation of Title 41, United States Code, Sections 8702 and 8707, and Title 18, United States Code, Section 2.

## COUNT THREE
### Receiving Illegal Gratuities
### (18 U.S.C. §§ 201(c) and 2)

27. Paragraphs 1 through 14 of this Superseding Indictment are re-alleged and incorporated by reference as if set out in full.

28. Between in or around 2010 through in or around 2015, in Kuwait, Defendant GARCIA, being a public official, otherwise than as provided by law for the proper discharge of official duties, directly and indirectly demanded, sought, received, accepted, and agreed to receive and accept something of value personally for and because of an official act performed and to be performed by him; that is, he sought and accepted the valuable services of SANKARALINGAM and other individuals associated with Gulf Link and Subcontractor #2, who facilitated, through the use of their Kuwaiti civil IDs, the transfer of approximately $90,000 from Kuwait to GARCIA's family members, for and because of GARCIA's actions in reviewing and scoring bid proposals submitted by those subcontractors.

All in violation of Title 18, United States Code, Sections 201(c)(1) and 2.

## COUNT FOUR
### Giving Illegal Gratuities
### (18 U.S.C. §§ 201(c) and 2)

29. Paragraphs 1 through 14 of this Superseding Indictment are re-alleged and incorporated by reference as if set out in full.

30. Between in or around 2012 through in or around 2015, in Kuwait, Defendant SANKARALINGAM, otherwise than as provided by law for the proper discharge of official duties, directly and indirectly gave, offered, and promised something of value to GARCIA, a public official, for and because of an official act performed and to be performed by GARCIA; that is, SANKARALINGAM and others acting under his direction gave valuable services to GARCIA by facilitating, through the use of their Kuwaiti civil IDs, the transfer of approximately $62,000 from Kuwait to GARCIA's family members, for and because of GARCIA's actions in reviewing and scoring bid proposals submitted by Gulf Link.

All in violation of Title 18, United States Code, Sections 201(c)(1) and 2.

## FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

31. The General Allegations and the allegations of Count Three are re-alleged and incorporated fully herein by reference for the purpose of alleging forfeiture to the United States of America of certain property in which Defendant GARCIA has an interest.

32. Upon conviction of the offense alleged in Count Three of this Superseding Indictment, GARCIA shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

33. The property subject to forfeiture includes, but is not limited to, approximately $90,000 which represents a sum of money derived from the commission of the illegal gratuities offense alleged in Count Three of this Superseding Indictment.

34. If any of the property described above, as a result of any act or omission of GARCIA

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred, sold to, or deposited with a third party;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant, up to the value of the above forfeitable property, and in addition, to require the defendant to return any such property to the jurisdiction of the Court for seizure and forfeiture.

A TRUE BILL

_____
Foreperson

ROBERT ZINK
Chief, Fraud Section
Criminal Division
United States Department of Justice

By: _____
Christopher D. Jackson
Trial Attorney, Fraud Section

9